[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2012
JOHN LEY
CLERK

No. 11-11379
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-00078-JOF-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUSSELL E. WORSHAM,
a.k.a. Russell Edward Worsham,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 11, 2012)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Russell Worsham appeals his conviction and his life sentence for enticing a

minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). He

contends that: (1) the plain language of § 2422(b) does not cover the conduct

charged in his indictment because no actual minor existed and, in any event, he did

not entice a minor for sex, only the fictitious minor's fictitious mother; (2) the

district court erred by admitting evidence of his prior bad acts; (3) the evidence

presented at trial was insufficient to prove that he had criminal intent or that he

took a substantial step toward violating § 2422(b); and (4) the district court erred

by sentencing him to life in prison in violation of the Sixth and Eighth

Amendments.

I.

As a part of the FBI's Innocent Images Task Force, a Sandy Springs Police

Department detective logged onto an internet chatroom dubbed "Pedomoms"

under the screen name "Tiffgurl07." Worsham, then 42 years old, initiated a

private chat with the detective, who posed as a 30-year-old mother named

"Tiffany" from Georgia with a 7-year-old daughter named "Stephanie," or "Steph"

for short. Worsham's screen names included "Dad4momngirl," "Harddad," and

"Dadd."

In their first chat, the detective said she was not interested in men who were

"into fantasy." Worsham responded that he wanted girls who were into "RL," or

real life, and asked for a dinner date with "Tiffany" and her 7-year-old daughter. The detective agreed to a date, and then Worsham wrote to her: "I would love ["Steph"] crawling all over me before you even get to. Would you be hot seeing her sitting on my lap wiggling hugging and kissing? . . . What would make you hottest, girl? Do you two play at all?" The detective responded no and said she wanted "Steph's" first sexual encounter to be with a male. Worsham replied: "Mmm." He later described what he wanted "Steph's" first time to involve in graphic detail, which included her "mother's" active participation.

In the next chat, the detective again said she did not have any interest in "pretenders"; Worsham reassured her that he was not one. The two discussed a date and bringing along "Steph" before later exchanging e-mail addresses. Worsham's e-mails repeated the same request for a date with the "mom" and "daughter" with some "play" afterwards. Worsham also e-mailed the detective a photograph of his erect penis with the message: "You two are all I can think about. What are you both doing tomorrow? E-mail me back, baby, make sure to show baby, mmm."[1]

After about three months of chats and e-mails, the two finally planned to

---

[1] The detective testified at Worsham's trial that she believed the request to "show baby" referred to showing the photograph of his penis to "Steph."

meet at a Mexican restaurant in Sandy Springs, Georgia. The two then had an explicit online chat about the planned lunch date between "Tiffany," "Steph," and Worsham followed by "play" afterwards. Their correspondence grew more explicit leading up to the meeting date as Worsham described the sexual acts he wanted to perform on "Steph" and how he would entice her to reciprocate: by having her act out scenes from a pornographic video he would show her. For instance, Worsham wrote: "I want mom straddling baby's face so that juice drips in her little mouth." And he also wanted to play a "spanking game."

On the day of the planned meeting, Worsham drove 100 miles from Macon, Georgia, to Sandy Springs. He arrived at the restaurant at the agreed upon time, and FBI agents arrested him as soon as he stepped out of his van. In that van, the agents found a camera, a spanking tool known as a riding crop, a purple hairbrush, a box of crayons, and some CDs. One CD contained computer-animated child pornography featuring graphic images of a father repeatedly molesting his 12-year-old daughter.

## II.

A federal grand jury indicted Worsham on one count of enticing a minor to engage in an illegal sexual act in violation of 18 U.S.C. § 2422(b). About three months before the trial, Worsham filed a motion in limine to bar any evidence of

his prior bad acts from the trial. A day later, the government filed a joint motion and notice under Federal Rules of Evidence 404(b) and 414 of its intent to introduce four female witnesses who would testify that Worsham raped or molested them betwen 1999 and the mid-2000s while they were between the ages of 8 and 15 years old. The notice did not provide any further details, such as the witnesses' names, their statements, or statement summaries.

The district court considered those motions days before the trial. Worsham argued that the government did not comply with Rule 414(b)'s notice requirements because it had not disclosed the witnesses' statements or summaries of their statements. The government offered to concede to Worsham his argument on Rule 414 and argue for the admission of the witnesses' testimony solely under Rule 404(b), which did not have as detailed notice requirements as Rule 414. The district court objected to merely changing the name of the rule to admit evidence that was not otherwise admissible. Instead, the district court gave Worsham a couple of days to determine if he needed a continuance so that he could research the witnesses and their proposed testimony.

At an in camera meeting with the district judge two days later, Worsham's counsel requested a continuance. Worsham's counsel, however, also told the judge that they had enough information to question one of the four witnesses, who

they argued had a motivation to lie to harm Worsham. After that meeting, the district court dismissed Worsham's motion in limine as to that one witness, specifically adding "it seems to me that defense counsel knows enough to cross-examine" her.

At trial that witness was the only one of the four women to testify against Worhsam. She testified that while she was between the ages of 9 and 12 and while she and her mother lived with Worsham, he raped and forced her to have oral sex with him at least twice a month. The jury also heard testimony from the Sandy Springs detective, FBI agents, and Worsham himself.

The jury convicted Worsham of violating 18 U.S.C. § 2422(b). The offense has a statutory minimum of 120 months in prison and a statutory maximum of life in prison. 18 U.S.C. § 2422(b). The presentence investigation report recommended a base offense level of 28 under U.S.S.G. § 2G1.3(a)(3) along with four different increases in that level. The first was a 2-level increase under U.S.S.G. § 2G1.3(b)(3) because Worsham used a computer to entice a minor to engage in prohibited sexual conduct. The second was an 8-level increase because his conviction under 18 U.S.C. § 2422(b) involved a minor who had not attained

6

the age of 12 years.  See U.S.S.G. § 2G1.3(b)(5).[2]  The third was a 2-level increase under U.S.S.G. § 3C1.1 for obstruction of justice because Worsham had given materially false testimony at trial.

The fourth offense level increase that the PSR recommended was a 5-level increase under U.S.S.G. § 4B1.5(b)(1) because Worsham had been convicted of a sex crime and had a pattern of activity involving prohibited sexual conduct.  The factual basis for this pattern-of-activity increase was the statements of three of the four women who said that they had been raped or otherwise sexually molested by Worsham while they were minors; one of those three had testified at trial.  The PSR detailed the FBI's investigation into those women's claims.  With all four increases counted, Worsham's total offense level was 45.  When combined with his criminal history category of I, the result was a recommended guidelines sentence of life in prison.

At sentencing, the district court adopted the PSR's recommendations and sentenced Worsham to life in prison.  This is his appeal.

III.

---

[2] The corresponding guidelines commentary defines "minor" as "an individual, whether fictitious or not, who a law enforcement officer represented to a participant [] had not attained the age of 18 years, and [] could be provided for the purposes of engaging in sexually explicit conduct." U.S.S.G. § 2G1.3, comment. (n.1).

Worsham's contends that it is factually impossible for him to have violated 18 U.S.C. § 2422(b) because he corresponded not with an actual minor but with an undercover detective. That contention is foreclosed by our precedent. See United States v. Lanzon, 639 F.3d 1293, 1299 (11th Cir. 2011) ("[A]n actual minor victim is not required for an attempt conviction under § 2422(b). A defendant can be convicted under this section when he arranges to have sex with a minor or a supposed minor through communications with an adult intermediary." (citation and quotation marks omitted)).

IV.

Worsham contends that the district court erred under Rule 404(b) by allowing his former rape victim to testify at trial, but he does not argue that the evidence was not admissible under Rule 414. That rule states: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a); see also Fed. R. Evid. 414(d)(2)(A), (F) (defining "child molestation" as an "attempt to engage in conduct" in violation of 18 U.S.C. § 2422(b)).

"[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at

8

trial—will be considered abandoned." United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). Worsham has abandoned any argument that the rape victim's testimony was not admissible under Rule 414 by not plainly and prominently raising that issue on appeal.[3]

## V.

Worsham also contends that the trial evidence was insufficient to show that he either had the intent to violate 18 U.S.C. § 2422(b) or took a substantial step to do so. "We review de novo whether sufficient evidence supports a conviction, resolving all reasonable inferences in favor of the verdict." United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). "In reviewing evidentiary sufficiency, we must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt." Id. (quotation marks omitted). "To convict [Worsham] under § 2422(b) for attempting to entice a minor for sexual activity, the government needed to prove (1) that [Worsham] acted with the kind of

---

[3] Worsham does argue, in a footnote, that the only basis for the district court's admission of his prior bad acts was Rule 404(b). He says that the government dropped its Rule 414 argument before trial when the dispute about sufficient notice arose. The record shows, however, that the district court refused to accept the government's proposed concession on Rule 414. And then the court denied Worsham's motion to exclude on Rule 414 notice grounds the testimony of the only one of those four women who took the stand against Worsham at trial. The court reasoned that he would not be prejudiced by the failure to give better notice, and Worsham has not challenged that ruling before this Court.

9

culpability required for the crime he was charged with attempting, and (2) that he engaged in conduct constituting a substantial step toward its commission." Id.

A person convicted under 18 U.S.C. § 2422(b) must "knowingly persuade[], induce[], entice[], or coerce[]" a minor "to engage in . . . any [illegal] sexual activity." 18 U.S.C. § 2422(b) (emphasis added); see also Ga. Code Ann. § 16-6-4(a) (criminalizing the sexual molestation of minors younger than 16 years old). In Farley, the defendant instructed an FBI agent, posing as the mother of an 11-year-old girl, to show her prepubescent daughter pornographic materials, teach her to masturbate, and touch her sexually. 607 F.3d at 1302. He also described in detail the way he planned to molest the daughter and sent a photograph of his penis for the daughter's viewing. Id. at 1304, 1306. Then he flew from Dallas to Atlanta to meet the girl. Id. at 1306. We concluded those facts were sufficient to establish Farley's criminal intent under § 2422(b). Id. at 1333–34.

The facts in this case are strikingly, and alarmingly, similar. Worsham chatted with an FBI agent pretending to be the mother of a 7-year-old girl. He described in lurid detail the sexual acts he would perform on the girl and how he would entice her to do them. He also spoke of playing a "spanking game" with the girl and sent a graphic photograph of his penis for her to see. After repeatedly denying that he was merely fantasizing, Worsham proved that, indeed, he was not

10

by driving 100 miles to meet the mother and daughter. FBI agents found in his van a riding crop and computer-animated child pornography. All of that evidence was sufficient to show Worsham had the necessary criminal intent under § 2422(b).

Lanzon is instructive about whether Worsham took a substantial step in committing this crime. In Lanzon, we concluded that the defendant had taken a substantial step toward violating § 2422(b) when he: (i) engaged in sexually explicit chats about a 14-year-old girl with a man he believed to be her mother's live-in boyfriend; (ii) arranged to meet them for sex; and (iii) drove several miles to the meeting place. 639 F.3d at 1299. The minor in that case was also fictional. Id. Virtually the same facts are present here, and the evidence is sufficient here as well.

## VI.

Finally, Worsham contends that his life sentence was unconstitutional under the Sixth and Eighth Amendments. We review de novo constitutional challenges to a sentence. United States v. Chau, 426 F.3d 1318, 1321 (11th Cir. 2005).

## A.

Worsham argues that the district court impermissibly increased his sentence, in violation of the Sixth Amendment, by using evidence that the jury did not

consider when making its guilt determination. That evidence included the rape and molestation accusations contained in the PSR from two women who did not testify at the trial. (As we have mentioned, a third woman did testify to similar facts involving Worsham's rape and molestation of her.) Once again, Worsham's arguments are foreclosed by precedent:

> We have also held that a district court may make additional factual findings under a preponderance of the evidence standard, that go beyond the facts found by the jury, so long as the court recognizes the Guidelines are advisory. And, we have held that a district court may enhance a sentence based upon judicial fact-finding provided that its findings do not increase the sentence beyond the statutory maximum authorized by facts determined in a guilty plea or jury verdict.

United States v. Dean, 487 F.3d 840, 854 (11th Cir. 2007) (citation omitted; emphasis added).

The statutory maximum for Worsham's conviction under 18 U.S.C § 2422(b) is life in prison. The district court sentenced him to life in prison. The court did not violate his Sixth Amendment rights.

B.

Worsham argues for the first time on appeal that his life sentence violates the Eighth Amendment. "A sentence only violates the Eighth Amendment if it is grossly disproportionate to the offense." United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009) (quotation marks omitted). "In non-capital cases, the Eighth

12

Amendment encompasses, at most, only a narrow proportionality principle. Generally, when a sentence is within the limits imposed by statute, it is neither excessive nor cruel." Id. (citation and quotation marks omitted). Moreover, when a party raises an argument for the first time on appeal, we review for plain error only the district court's decision. United States v. McGarity, 669 F.3d 1218, 1257 n.59 (11th Cir. 2012). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

Worsham's life sentence was within the limits of 18 U.S.C. § 2422(b). And he points to no precedent showing the district court's sentencing determination was plainly erroneous.

**AFFIRMED.**