[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14535

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2011
JOHN LEY
CLERK

D.C. Docket No. 06-20783-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEITH JOSEPH LANZON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 4, 2011)

Before CARNES, KRAVITCH and SILER,* Circuit Judges.

SILER, Circuit Judge:

_____

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Keith Joseph Lanzon appeals his conviction by a jury for attempting to persuade, entice, or coerce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). The issues raised concern the sufficiency of the evidence, the failure to suppress evidence, and the spoliation of evidence. For the following reasons, we affirm.

**I.**

On September 8, 2005, Detective George Clifton, a member of the Miami-Dade Police Department's Sexual Crimes Bureau, signed online using the undercover persona "Tom." Detective Clifton created an AOL profile for "Tom" that described him as a male living with his girlfriend and his girlfriend's 14-year-old daughter. "Tom" entered an internet chat room entitled "Florida Couples." Lanzon, under the username "SlingerHD," was a participant in this chat room. Lanzon and Detective Clifton then communicated by instant message for approximately 30 minutes.

At the beginning of their text conversation, Lanzon asked, "she play too?" Detective Clifton replied, "yes." Lanzon stated that he had "never crossed into that situation yet." Lanzon asked Detective Clifton to describe the 14-year-old daughter's appearance, and indicated his interest in meeting her. Detective Clifton asked what Lanzon wanted to do with the 14-year-old, and Lanzon responded, "[I] love oral,"

"hot passionate sex," and "totally satisfying a female." Detective Clifton and Lanzon arranged to speak again later.

Later that day, Lanzon contacted Detective Clifton, resulting in an hour and 20 minute text conversation. Lanzon typed that he had "been thinking" about "Tom" and his girlfriend's daughter, and reaffirmed his interest in meeting her. They proceeded to discuss a time to meet. Detective Clifton mentioned that "being that she is 14," he would either have to "get her out of school or wait for school to let out." Lanzon responded "days are good, early evenings are good too." Lanzon assured Detective Clifton he was "serious." Detective Clifton then told Lanzon that he must use condoms, and that the 14-year-old liked colored condoms. The two discussed what Lanzon wanted the girl to wear and what sexual techniques would "make her happy." Lanzon said, "you know what we are doing isn[']t right, fun but not right." Detective Clifton responded, "yes, I know" and told Lanzon, "[I] will go my way and you will go yours" with "no hard feeling" if he felt uncomfortable. Lanzon assured him he did not want to back out of the arrangement.

During their third and final conversation, Lanzon again contacted Detective Clifton and asked whether he had spoken with his girlfriend's daughter. Detective Clifton replied, "she is okay with everything." Lanzon said he would prefer to meet them that day around noon, and asked where they could meet. Detective Clifton

suggested a bookstore in Aventura, Florida, where they could have a cup of coffee and then "take care of business." Lanzon said, "sounds perfect," and asked where they would go after the bookstore. Detective Clifton replied that they would go to a "hotel on the beach" located ten minutes from the bookstore. The two described to each other what they would be wearing, and Lanzon asked what kind of candy the girl liked. Detective Clifton responded, "she loves peppermint." Lanzon asked for directions to the bookstore, and said he would follow Detective Clifton to the hotel.

Detective Clifton saved these online conversations by copying the instant message communications and pasting them into a Microsoft Word document. He then saved the Word document to a floppy disc, where the conversations could be printed in hard copy form as transcripts. Detective Clifton did not save any of the instant message conversations in their original format to his computer's hard drive, but he compared the actual instant message "chat screens" to the word processing document he had created to ensure that they exactly matched and that he had accurately recorded the conversations in their entirety.

On September 9, 2005, Lanzon drove to the designated bookstore and parked his truck near the bookstore. When he entered the bookstore, he approached the two undercover officers posing as "Tom" and the 14-year-old girl. He was promptly arrested. The officers sought his consent to search his truck, but he refused. The

officers then used Lanzon's keys to enter and search the truck, seizing multi-colored condoms, mint-flavored lubricant, and a receipt for the purchase of those items. In the official incident report, the officers' actions were characterized as an inventory search.

In July 2007, Lanzon was indicted for a violation of 18 U.S.C. § 2422(b), which provides:

> Whoever, using . . . any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be . . . imprisoned.

When Lanzon requested that the government identify which criminal offense served as the predicate for the § 2422(b) violation, the government obtained an indictment charging him with an offense of § 2422(b) based on Florida Statute § 800.04. Since § 800.04 contains multiple subsections and the government did not specify which applied, the district court dismissed the indictment.

In September 2008, the government filed a superceding indictment charging Lanzon with a violation of § 2422(b) based on an attempted violation of Florida Statute § 800.04(4)(a), which criminalizes engaging in sexual activity with a person under the age of 16 years.

Lanzon moved to suppress the evidence seized from his truck, arguing that the officers violated the criteria established by the Miami-Dade County Code relating to inventory searches. Following an evidentiary hearing, the court determined that the officers had probable cause to conduct the warrantless search of Lanzon's truck pursuant to the automobile exception.

Lanzon also moved to exclude the instant message transcripts, arguing that Detective Clifton deliberately destroyed the original instant message conversations. In the alternative, Lanzon requested a jury instruction on spoliation of evidence. At the evidentiary hearing, Lanzon called a forensic expert who examined Detective Clifton's computer. The expert testified that he recovered only a remnant of the Word document containing the pasted versions of the original conversations. The expert explained that, because Detective Clifton did not save the document directly to his computer's hard drive, there was no metadata for the document. Without metadata, it could not be determined whether Detective Clifton altered the original instant message conversations. Detective Clifton testified that he preserved the conversation in the standard method he learned at the police department. He chose to save the transcripts on floppy disc, rather than the hard drive, to conserve computer memory. The district court denied Lanzon's motion to exclude and reserved a ruling on the spoliation instruction.

Lanzon was tried and convicted before a jury in 2009. At the close of the evidence, he moved for a judgment of acquittal. He argued that he was indicted under the wrong subsection of § 800.04, which punished completed sex crimes rather than solicitation to commit sex crimes. He further argued that the government had not proved he "could have been charged" by state prosecutors. The court reserved ruling on the motion to allow the jury to decide.

Prior to closing arguments, Lanzon filed a request for jury instructions on spoliation. First, he asked the court to instruct the jury that, under 18 U.S.C. §§ 1512 and 1519, it was a crime for Detective Clifton to destroy or alter evidence. Second, he requested an instruction on spoliation, which would have permitted the jury to draw an adverse inference from Detective Clifton's actions. The district court refused these instructions because Lanzon failed to present evidence of bad faith on the part of Detective Clifton.

Lanzon filed a motion for a new trial, arguing that the district court committed reversible error in rejecting his proposed jury instructions. The court denied the motion, reiterating that Lanzon had failed to present any evidence of bad faith by Detective Clifton. Lanzon also filed a renewed motion for judgment of acquittal, restating his argument that he could not have been charged in Florida under § 800.04(4)(a). He further contended that, even if Florida law recognized the crime of

7

"attempting" to violate § 800.04(4)(a), his conduct did not constitute an attempt because his actions did not reach far enough in accomplishing the attempted crime. Finally, he argued that the indictment failed to state an offense under Florida law because Florida law did not recognize the "double inchoate" crime of "attempt[ing] to persuade, induce, entice, or coerce." The district court denied the motion, explaining that "due to the manner in which Congress phrased 18 U.S.C. § 2422(b) . . . . he was properly convicted under § 2422(b) due to the fact that he attempted to persuade, induce, entice, or coerce the minor to engage in sexual activity."

The district court sentenced Lanzon to 60 months imprisonment and a lifetime of supervised release.

## II.

## A.

Lanzon first challenges the sufficiency of the evidence supporting his conviction. He argues the government failed to show that he "could have been charged" under the Florida statute, § 800.04(4)(a), which he asserts criminalizes only a completed sexual act. He also contends that he did not take a substantial step toward completing the illegal act.

We review de novo issues of statutory interpretation and sufficiency of the evidence. *United States v. Sabretech, Inc.*, 271 F.3d 1018, 1022 (11th Cir. 2001).

8

We view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007).

We reject Lanzon's arguments for two reasons. First, "[t]he underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). The Seventh Circuit has recognized, albeit in dicta, that even if a state statute did require a completed sexual act, the federal statute would still criminalize an attempt to commit the sexual act. *See United States v. Mannava*, 565 F.3d 412, 417 (7th Cir. 2009) ("If state law criminalizes only the completed sexual act, section 2422 would still impose liability for attempting to induce or persuade a minor to engage in the act, because an attempt 'to engage in . . . any sexual activity for which any person can be charged with a criminal offense' is explicitly criminalized by that section. But that is not an issue here, because the state law offenses are offenses of solicitation and hence do not require a completed sexual act."). Congress expressly included attempts in the prohibited conduct under § 2422(b). In fact, it amended the statute in 1998 to add the attempt language to it. *See United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002).

Because § 2422(b) is a federal statute, the interpretation of what "attempting" means under the statute is a matter of federal law. *See Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009) ("Because the Disclosure Act is a federal statute its interpretation is a matter of federal law, so we will use principles of statutory interpretation from federal decisions to construe the term 'obligating.'"); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 n.9 (11th Cir. 2005) ("The meaning of this statutory language in the FAA involves interpretation of a federal statute and thus is a question of federal law. We thus reject the plaintiffs' argument that Georgia law governs this issue."). Thus, if a defendant attempts to persuade a minor to engage in illicit sexual activity, but does not actually engage in a sex act, § 2422(b) has still been violated. *See id.*; *Root*, 296 F.3d at 1227 n.10. Lanzon's attempt to persuade a 14-year-old to engage in sexual activity plainly violates the federal statute.

Second, "an actual minor victim is not required for an attempt conviction under § 2422(b)." *Root*, 296 F.3d at 1227. A defendant can be convicted under this section when he arranges to have sex with a minor or a supposed minor through communications with an adult intermediary. *Murrell*, 368 F.3d at 1286. In either circumstance, the government must show that he (1) "intended to cause assent on the part of the minor," and (2) "took a substantial step toward causing assent, not toward

10

causing actual sexual contact." *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010). Lanzon took a substantial step in attempting to violate § 2422(b). *See Bist v. State*, 35 So. 3d 936, 941-42 (Fla. 5th DCA 2010). He conducted sexually explicit online conversations regarding a 14-year-old, and arranged to meet "Tom" and the 14-year-old to engage in sexual activity. *See id.* at 941. He drove several miles to the arranged meeting place, approached the undercover officers asking for "Tom," and carried condoms and mint lubricant in his truck. *See id.* at 942. These actions "strongly corroborate" Lanzon's culpability and support the jury's verdict. *See Root*, 296 F.3d at 1228. Just as Root engaged in conduct that would have constituted a violation of O.C.G.A. §§ 16-6-3 (statutory rape) and 16-6-4 (child molestation) if he had actually completed his crime, *see id.* at 1227 n.10, Lanzon engaged in conduct that would have constituted a violation of Fla. Sta. §§ 800.04(4)(a) if he had completed his crime.

**B.**

Lanzon next argues that the district court erred in denying his motion to suppress evidence seized from his truck. The district court's denial of a motion to suppress evidence is a mixed question of law and fact. *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). We review rulings of law de novo. *Id.* Findings

11

of fact are reviewed for clear error, in the light most favorable to the prevailing party in the district court. *Id.*

For a warrantless search of an automobile to be constitutional, (1) the automobile must be readily mobile, and (2) there must be probable cause to believe that it contains contraband or evidence of a crime. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances. *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006).

The district court did not err in denying Lanzon's motion to suppress because the truck was mobile and the officers had probable cause to search the truck pursuant to the automobile exception. Lanzon participated in instant message conversations with "Tom," describing his intent to have sex with a 14-year-old. He agreed to meet "Tom" and the 14-year-old at a specific time and place. He also agreed to bring colored condoms and discussed the girl's preference for peppermint candy. He then drove his truck to the designated meeting place at the agreed-upon time and approached the officers who were posing as "Tom" and the 14-year-old, and he said "Tom, Tom." When Lanzon was arrested, an officer did a pat down search and found no condoms. Under the totality of the circumstances, there was a fair probability that

evidence of a crime would be found in Lanzon's vehicle. *See Tamari*, 454 F.3d at 1264.

The fact that Detective Clifton recorded the search in the incident report as an inventory search does not change this conclusion. A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search. *Scott v. United States*, 436 U.S. 128, 136 (1978). The inquiry focuses upon whether the facts established that the officer had probable cause to search the vehicle, and the officers here had probable cause to search the truck in accordance with the automobile exception.

## C.

Lanzon next contends that Detective Clifton failed to preserve computer evidence and the instant message transcripts should not have been admitted at trial. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008). Factual findings underlying an evidentiary ruling are reviewed for clear error. *United States v. Dickerson*, 248 F.3d 1036, 1046 (11th Cir. 2001).

Lanzon makes four arguments regarding the failure to preserve computer evidence. First, he argues that the destruction of the original files and admission of the transcripts violated his due process rights because the originals were destroyed

in bad faith. The loss of evidence by the government is a denial of due process only when the defendant shows that "the evidence was likely to significantly contribute to his defense." *Untied States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006). The defendant must also show that the loss of evidence was a result of bad faith on the part of the government or police. *Id.*

Lanzon has not provided evidence of bad faith on the part of Detective Clifton. He alleges that Detective Clifton deliberately destroyed and failed to preserve evidence when he transferred the instant message conversations to Word documents, but fails to support this contention with evidence. In response, Detective Clifton testified that he preserved the conversation in the standard method he learned at the police department and that he compared the actual instant message "chat screens" to the word processing document he had created to ensure that they exactly matched and that he had accurately recorded the conversations in their entirety. He further testified that his preservation method was intended to conserve hard drive memory on his computer. He also testified about his methods for saving the conversations in their entirety without any editing, and he was found to be credible. Lanzon offered no evidence showing that the transcripts were edited or altered.

Second, Lanzon argues that the admission of the transcripts violated the authentication requirement of Federal Rule of Evidence ("FRE") 901(a) because the

14

detective transferred the instant messages to a Microsoft Word document, preventing authentication and leading to possible manipulation and error. Pursuant to FRE 901(a), a document submitted as evidence must be properly authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evidence may be authenticated through the testimony of a witness with knowledge. FRE 901 (b)(1). The proponent need only present enough evidence "to make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985). "A district court has discretion to determine authenticity, and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).

The district court did not abuse its discretion by admitting the transcripts, or clearly err in accepting as fact Detective Clifton's authenticating testimony. Detective Clifton testified that he participated in the online chats and the transcripts were accurate copies of those conversations. His testimony was sufficient "competent evidence" to authenticate the transcripts. *Siddiqui*, 235 F.3d at 1322; *Caldwell*, 776 F.2d at 1002. We have held that transcripts were properly admitted even when a person who was involved with creating them testified about their authenticity and

more steps were involved in their creation than there were in the present case. *See United States v. Puentes*, 50 F.3d 1567, 1577 (11th Cir. 1995) ("The inspector testified that he heard every conversation that was contained in the transcripts; that the conversations were then written out in longhand; that the longhand transcription was then compared to the recorded conversation; and, finally, that the longhand transcript was then dictated to a secretary and the typewritten product compared to the longhand transcription.").

Third, Lanzon contends the transcripts violated the best evidence rules in FRE 1001-1004 because the originals were destroyed by Detective Clifton in bad faith and the transcripts were not the equivalent of photocopies. The best evidence rule requires the proponent to produce the original to prove the contents of a writing, recording, or photograph. FRE 1001; *United States v. Howard*, 933 F.2d 610, 612 n.1 (11th Cir. 1992). An original is not required if it is lost or destroyed, except when lost or destroyed through bad faith, or if it is otherwise unobtainable. FRE 1004(1)-(2). A duplicate is admissible to the same extent as an original, "unless (1) a genuine question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." FRE 1003. A "duplicate" includes a "counterpart produced by the same impression as the original

16

. . . or by mechanical or electronic re-recording . . . or by other equivalent techniques which accurately reproduces the original." FRE 1001(4).

The district court did not abuse its discretion in rejecting Lanzon's best evidence objection because there was no showing of bad faith. Accordingly, the transcripts were admissible under Rule 1004 because they contain evidence of the conversations and the originals were not destroyed in bad faith. It is therefore immaterial whether the transcripts are duplicates within the meaning of the rules.

Fourth, Lanzon argues the admission of the transcripts violated the rule of completeness in FRE 106 because Detective Clifton failed to include the entire chat transcript, and included only the edited portion that supported his case. The rule of completeness provides that when "a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." FRE 106. FRE 106 "does not automatically make the entire document admissible." *United States v. Simms*, 384 F.3d 1347, 1359 (11th Cir. 2004). Rather, "[i]t is consistently held that the rule permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *Id.*

17

The district court did not abuse its discretion by failing to admit the alleged additional parts of the instant message transcripts. There is no indication that additional parts of the conversation exist. Lanzon also does not suggest how additional material would "qualify, explain, or place into context" the portion admitted into evidence. *See id.*

**D.**

Finally, Lanzon argues that the district court erroneously denied his request for a jury instruction on spoliation and destruction of evidence. We review the district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Klopf*, 423 F.3d 1228, 1242 (11th Cir. 2005).

A criminal defendant has the right to a jury instruction on a proposed theory of defense, provided it is a valid defense and there is some evidence at trial to support the instruction. *United States v. Arias*, 431 F.3d 1327, 1340 (11th Cir. 2005). The burden is "extremely low," with the right to instructions where "there is any foundation in the evidence." *Id.* A court's refusal to give a defense instruction is reversible error if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States*

18

*v. Martinelle*, 454 F.3d 1300, 1309 (11th Cir. 2006). "If the charge to the jury adequately and correctly covers the substance of the requested instruction, there is no reversible error." *United States v. Lively*, 803 F.2d 1124, 1128 (11th Cir. 1986).

The district court did not abuse its discretion in denying Lanzon's proposed jury instructions. As an initial matter, we have not recognized the spoliation doctrine in the criminal context, but we have recognized the potential availability of spoliation sanctions in a civil case where a party fails to preserve evidence. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943-44 (11th Cir. 2005). Spoliation sanctions are "intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* at 944. An "adverse inference instruction" is proper in civil cases where a party has failed to preserve evidence and there is a showing of bad faith in doing so. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). Assuming *arguendo* that the doctrine applies in this context, the court did not err in finding no bad faith in Detective Clifton's method of evidence preservation. There is no evidence that portions of the conversations were destroyed or altered, and Lanzon offered no evidence to refute Detective Clifton's testimony that he saved the conversations in their entirety. Moreover, there is no showing of prejudice, as it is not apparent how the alleged additional portions of the conversations would have led to a different outcome.

**AFFIRMED.**