[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10982
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cr-00179-ACC-KRS-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RACHEL RUIZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 20, 2013)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Rachel Ruiz appeals her conviction for marriage fraud, in violation of 8 U.S.C. § 1325(c).

## I.

In July 2012, a grand jury charged Ruiz with entering into a marriage for the purpose of evading immigration laws. Specifically, Ruiz was charged with marrying her ex-husband, Rustamhon Bahriddinov, a citizen of Uzbekistan who had overstayed his student visa, for the sole purpose of obtaining legal residency for Bahriddinov. Ruiz pleaded not guilty, and her case proceeded to a jury trial.

At trial, the government's evidence showed that Bahriddinov and his actual girlfriend, Mariya Baran (a citizen of the Ukraine), each wanted to obtain residency in the United States. To achieve this goal they contacted Ender Rodriguez about the possibility of arranging marriages to U.S. citizens. Rodriguez testified that he had a long, successful history of coordinating sham marriages between U.S. citizens and non-citizens. In exchange for a fee, Rodriguez agreed to match Bahriddinov and Baran with U.S. citizens, provide assistance in obtaining and filling out the marriage and immigration paperwork, and counsel the "couples" on how to conduct themselves during immigration interviews. To this end, Rodriguez employed "recruiters" to find citizens interested in partnering with Bahriddinov and Baran. Rodriguez also agreed to facilitate third-party money transfers totaling $10,000 between Bahriddinov and Baran and their putative

2

"spouses": $5,000 "up front," and $5,000 "[a]fter the immigration interview."  In return, Bahriddinov's and Baran's spouses would agree to remain married to Bahriddinov and Baran for at least three years.

According to this general scheme, Bethania Deschamps, a Rodriguez recruiter, contacted Ruiz in early 2008 about the possibility of marrying Bahriddinov.  After this initial contact, Rodriguez facilitated a meeting between Ruiz and Bahriddinov.  About a month later, on April 2, 2008, the couple got married.  Rodriguez testified that after the marriage Bahriddinov paid him his $3,000 fee.  Rodriguez also stated that he facilitated payment of Ruiz's initial $5,000 installment.  Rodriguez memorialized this payment to Ruiz in an undated document labeled "Borrower Statement," which reflected that Rodriguez "lent . . . Rachel Ruiz . . . cash in the amount of $5,000."  Attached to the Borrower Statement was a copy of Ruiz's driver's license, as well as her signature.  The government entered the Borrower Statement into evidence.

The evidence at trial further showed that Ruiz and Bahriddinov divorced in May 2011, shortly after the expiration of their three-year agreement.  The terms of their marriage came to light when immigration authorities arrested Rodriguez on charges of conspiracy against the United States (stemming from his marriage brokering business) and seized his files.  Deschamps was also arrested and charged

with conspiracy to commit marriage fraud for her role as Rodriguez's recruiter. Mariya Baran, Bahriddinov's girlfriend, was arrested on related charges.

Rodriguez, Deschamps, Baran, and others testified for the government at Ruiz's trial. After the government rested its case, Ruiz moved for judgment of acquittal, arguing that the evidence was insufficient to support a guilty verdict. The district court denied this motion.

Ruiz's defense case included her testimony that her marriage to Bahriddinov was genuine, that her business with Rodriguez was legitimate and related to ensuring that Bahriddinov's immigration paperwork was properly completed, and that she never received any money for marrying Bahriddinov. After Ruiz rested her case, she did not renew her motion for judgment of acquittal.

The jury found Ruiz guilty of marriage fraud as charged in the indictment. In February 2013, the district court sentenced Ruiz to two years probation. This appeal followed.

## II.

On appeal, Ruiz argues that the district court erred by: (1) admitting the Borrower Statement into evidence because it was not properly authenticated; and (2) failing to grant her motion for judgment of acquittal. We consider each argument in turn.

## A.

4

Ruiz first argues that the district court erred when it admitted the Borrower Statement into evidence without proper authentication. "We review the district court's ruling on admission of evidence for abuse of discretion." United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Among other means, this can be accomplished through "[t]estimony that an item is what it is claimed to be." Id. 901(b)(1). "Authentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." United States v. Caldwell, 776 F.2d 989, 1001–02 (11th Cir. 1985). "Once that prima facie showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be." Id.

We are not persuaded by Ruiz's argument that the government failed to present enough competent evidence to authenticate the Borrower Statement. The government offered the Borrower Statement as proof that Ruiz received payment for her marriage to Bahriddinov. Rodriguez testified that he recognized the document, and that it was a "receipt" that he created to document payment to Ruiz after her match with Bahriddinov. He indicated that he characterized the document

5

as a "Borrower Statement" (rather than a record of payment for participation in a sham marriage) because "[he] knew that [he] was doing something that was not correct," and he "was nervous because of the responsibility" that such a "receipt" would show.  He further explained that the document was not dated because the process of obtaining residency for Bahriddinov took three years and he preferred that there "be no expiration date."

In sum, this testimony was more than sufficient to make out a prima facie case that the Borrower Statement was what the government claimed it to be—a record of the transaction between Rodriguez and Ruiz.  Therefore, the district court did not abuse its discretion by admitting the document into evidence.  See Caldwell, 776 F.2d at 1001–02; see also United States v. Lanzon, 639 F.3d 1293, 1301 (11th Cir. 2011) (stating that a district court's "discretion to determine authenticity . . . should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it" (quotation marks omitted)), cert. denied, 132 S. Ct. 333 (2011).

## B.

Generally we review de novo the denial of a motion for judgment of acquittal, asking whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt, and construing the evidence in the light most favorable to the government.  United States v. Broughton, 689 F.3d 1260, 1276 (11th Cir.

2012).  However, where, as here, a defendant "presents his case after denial of a motion for judgment of acquittal and then fails to renew his motion for judgment of acquittal at the end of all of the evidence, we review the defendant's challenge to the sufficiency of the evidence for a manifest miscarriage of justice."  United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012) (quotation marks and alterations omitted), cert. denied, 133 S. Ct. 1633 (2013).  "This standard requires us to affirm the defendant's conviction unless the evidence on a key element of the offense is so tenuous that the conviction is shocking."  Id. (quotation marks and alterations omitted).  "In making this determination, we [still] view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict."  Id. (quotation marks omitted).

Upon review, it is hardly "shocking" that the jury convicted Ruiz of marriage fraud.  See id.  Pursuant to plea agreements, Ruiz's broker (Rodriguez) and recruiter (Deschamps), and Bahriddinov's actual girlfriend (Baran), among others, each testified regarding the details of the scheme to obtain Bahriddinov's legal residency through marriage to Ruiz.  Ruiz is correct to note that some of the testimony at trial was contradictory—certainly it contradicted her own account of her relationship with Bahriddinov.  However, "[b]ecause credibility determinations are the exclusive province of the fact finder, we cannot disregard the jury's

7

credibility determination unless it is unbelievable on its face." United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005) (quotation marks omitted).  Ruiz has not demonstrated that the government witnesses' testimony was so incredible that the jury was wrong to credit it over her own.  See id.; see also United States v. Thompson, 422 F.3d 1285, 1291 (11th Cir. 2005) ("For testimony to be considered incredible as a matter of law, it must be unbelievable on its face, i.e., testimony as to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." (quotation marks and alterations omitted)).  Nor has she shown that the evidence was otherwise "so tenuous" that a reasonable jury could not convict her of marriage fraud.  See House, 684 F.3d at 1196.  Thus, the district court properly denied her motion for judgment of acquittal.

III.

For these reasons, Ruiz's conviction is

**AFFIRMED.**