[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10254
_____

D.C. Docket No. 1:15-cr-20613-DMM-1


UNITED STATES OF AMERICA,

                                                                    Plaintiff - Appellee,

versus

PATRICK JACQUES,

                                                                    Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 1, 2017)

Before WILSON and ROSENBAUM**,** Circuit Judges, and TITUS,* District Judge.

PER CURIAM:

_____

* Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

Patrick Jacques appeals his below-the-guidelines range sentence, imposed after he was convicted by a jury for (1) possession of a firearm and ammunition by a felon, (2) possession of a firearm in furtherance of a drug trafficking crime, and (3) possession of a controlled substance with the intent to distribute.  On appeal, Jacques argues that his trial was plagued by several errors: insufficient evidence, improperly admitted testimony, prosecutorial misconduct, and erroneous jury instructions.  Although he contends that any of these errors alone warrants relief, Jacques claims that the multiple errors worked together, causing his trial to be fundamentally unfair.  Jacques also argues that the district court made a sentencing error in designating him as a career offender.  After a careful review of the parties' briefs, the record, and with the benefit of oral argument, we affirm.

On September 24, 2014, Patrol Officer Edgar Rivera of the Miami Police Department was on duty in the "Little Haiti" neighborhood of Miami when he received an assault call.  At the scene, he spoke to a woman who gave him a description of her assailants.  Officer Rivera was parked just a few blocks away writing up his incident report when he received another assault call from the same address; this time for shots fired.  He drove the short distance back to the scene and again spoke to the same woman, who now reported that a couple in a gray Nissan with paper license plates had approached her and fired a gun at her.  The woman provided a description of the couple and a partial license plate number.  Officer

2

Rivera responded by issuing a "be on the lookout" (BOLO) notice for the alleged assailants, the car, and the partial license plate number.

Nearby, Patrol Officer Reynold Philippe, who was also on duty in Little Haiti, spotted a car and a couple matching the description of Officer Rivera's BOLO—a gray Nissan Altima with a female driver and a male passenger. Officer Philippe, with the assistance of other officers, pursued the car and ordered its occupants out. The female driver was identified as Marlene Phanor and the male passenger was identified as Patrick Jacques. The car, which belonged to Phanor, was searched at the scene. From it, the police recovered a small .32 caliber handgun, 37 individual baggies of marijuana, and a pill bottle containing 10 rocks of crack cocaine, all concealed in the trunk. Both Jacques and Phanor were arrested and transported to the police station in separate vehicles.

At the station, Jacques was interrogated by Officer Philippe and two Bureau of Alcohol, Tobacco, and Firearms (ATF) agents. During the interrogation, and after waiving his rights, Jacques made several incriminating admissions and statements. He admitted to being near or at the address where the incidents occurred. He claimed that he was there arguing with a man whom he identified only as "Peterson," and Peterson's girlfriend. Jacques said that Peterson shot at him—not the other way around, as was reported by the woman that spoke to Officer Rivera. Jacques also disclosed that he had been smoking marijuana that

day and that he had some marijuana in the ashtray of the car, or on his person. But he denied selling marijuana that day and he denied having ever sold crack cocaine. Jacques, however, indicated that he had sold marijuana in the past and expressed that, on that day, he had "at least like 175 weed." Jacques also revealed that he had knowledge of what he described as a "bomb" in the car. Moreover, while Jacques initially denied knowing about the gun, he eventually divulged that he was the one that put the gun in the trunk; he has always denied firing it.

At trial, no gunshot residue (GSR) or DNA evidence was presented because the evidence had been destroyed. Officer Philippe testified as a lay witness regarding the interrogation and Detective Wayne Tillman testified as an expert based on his experience as an undercover narcotics officer. Detective Tillman testified as to the street value of the crack cocaine and marijuana, as well as to the packaging of the marijuana that was found in the car, opining that the substances were intended for distribution. More specifically, Detective Tillman testified that the 37 individual bags of marijuana recovered from the car were packaged in small zip-lock baggies and that each bag would likely sell for $5 on the street—meaning the amount of marijuana in the car was worth approximately $185.00. Detective Tillman also testified to the meaning of the term "bomb," explaining that it means a container or bag with smaller amounts of drugs in it. Finally, Detective Tillman

4

testified that the gun found in the car was frequently used by drug dealers because it was small and easy to conceal.

Jacques was convicted. At sentencing, Jacques objected to his career offender designation. His objection was overruled, and he was sentenced to 120 months' imprisonment. He timely appealed.

Jacques' various trial-related arguments fail because there were either no errors at all or only harmless ones; and none of them worked together to create the kind of fundamental unfairness needed to raise a cumulative effect of errors claim. There also was no error in Jacques' classification as a career offender. We briefly discuss each argument in turn.

First, there was sufficient evidence to support Jacques' conviction. His own statement not only establishes that he had marijuana on the day that he was arrested and that he frequently sold it, but it also places the gun in his possession. Vacating a jury's guilty verdict is appropriate only when no "reasonable construction of the evidence" points to guilt beyond a reasonable doubt. *United States v. Wilson*, 788 F.3d 1298, 1308 (11th Cir. 2015) (internal quotation marks omitted). Given the evidence, the jury was not unreasonable in finding that Jacques was guilty.

Second, the testimony by Officer Philippe regarding Jacques' interrogation was admissible. But even if some of it was admitted in error, it was harmless

5

because Jacques was not prejudiced.  Officer Philippe's testimony was based on his own personal perceptions from his participation in the interrogation.  It was also helpful to the jury.  We have held that lay opinion testimony is admissible when it is based on the witness's personal knowledge or perceptions and is helpful to the jury in determining an issue of fact.  *United States v. Rivera*, 780 F.3d 1084, 1094 (11th Cir. 2015); *United States v. Moran*, 778 F.3d 942, 967 (11th Cir. 2015).  All the same, Officer Philippe's testimony was duplicative of Detective Tillman's testimony; thus, if there was any error in admitting it, such error was harmless.

Third, Jacques challenges the prosecutor's remarks during closing arguments.  While the prosecutor's remark implying that the police only arrest criminals was improper, it did not warrant reversal given that Jacques' substantial rights were not prejudiced.  *United States v. Lopez*, 590 F.3d 1238, 1256–57 (11th Cir. 2009) (explaining that a "reasonable probability [] that, but for the remarks, the outcome of the trial would have been different" is necessary for reversal) (internal quotation marks omitted).  It was only one stray remark in a lengthy closing argument and the jury likely would have convicted Jacques irrespective of the remark.  Jacques' own statements made up the other evidence against him, which was strong proof of his guilt.

Fourth, the district court did not abuse its discretion in refusing to give a spoliation jury instruction, because we have yet to recognize whether a spoliation

6

jury instruction is applicable in a criminal context and decline to do so here. Because the law is unclear, there is no way to establish that Jacques' instruction was a correct statement of the law, meaning that the district court was not required to give the instruction. *United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011).

Finally, Jacques' career offender designation was not erroneous. Regardless of whether Florida burglary of an occupied dwelling is a crime of violence under the enumerated clause, it is so under the residual clause. *Beckles v. United States*, 580 U.S. ___, ___, 137 S. Ct. 886, 890 (2017).

**AFFIRMED**.