**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13469
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KERMON WILLIAMS,
   a.k.a. The General,
JHAPHRE HIGGS,
   a.k.a. Pre,
JAMES HIGGS, JR.,
   a.k.a. Hammer,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00293-CEH-CPT-1
_____

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

After a thirteen-day trial, Kermon Williams, James Higgs, and Jhaphre Higgs were convicted of various charges related to a plot to commit murder-for-hire and the resulting deaths of Tywan Armstrong and Roger Ford.  They now appeal their convictions arguing several grounds, including that they did not use a "facility of" interstate commerce under the murder-for-hire statute, 18 U.S.C. § 1958; that § 1958 exceeds Congress's commerce power insofar as it reaches their purely intrastate use of a personal vehicle to commit the offenses; and that the evidence was insufficient to prove they conspired or attempted to possess with intent to distribute cocaine.  After careful review of the record, and after receiving supplemental briefing on recent precedent, *see United States v. Bryan*, 159 F.4th 1274 (11th Cir. 2025), we affirm Defendants' convictions on all counts.

## I.

Williams and Armstrong were rival drug dealers in St. Petersburg, Florida.[1]  In 2018, Williams caught wind that Armstrong intended to rob him, so he decided to have Armstrong killed.  After soliciting a mutual acquaintance, who declined Williams's offer of $30,000 to kill Armstrong, Williams offered the job to James and

---

[1] Because Defendants challenge the sufficiency of the evidence, we take the facts from the evidence presented at trial and recite them in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. *See United States v. Lanzon*, 639 F.3d 1293, 1298 (11th Cir. 2011).

Jhaphre Higgs.  He paid the Higgs brothers $20,000 and "several ounces" of cocaine and gave them an AR-15 rifle to use to kill Armstrong.  The Higgs brothers split guns and drugs.

The Higgs brothers carried out Armstrong's murder on January 21, 2019.[2]  That night, driving a Cadillac, Armstrong left a crowded Shell gas station.  Soon after, the Higgs brothers pulled up beside the Cadillac in a blue Lexus and opened fire.  They shot Armstrong 28 times and front-seat passenger Roger Ford 12 times, killing both.  They also shot backseat passenger Carlos Young in his knee.  The road they used during the shooting was part of U.S. Route 19, an interstate roadway that runs between Florida and Pennsylvania.

A federal grand jury returned a superseding indictment charging federal murder-for-hire, drug, and gun crimes.  Williams and the Higgs brothers were charged with conspiring to use and using or causing another to use a facility of interstate commerce to commit murder for hire, in violation of 18 U.S.C. § 1958 (Counts One & Two); conspiring to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count Three); and using, carrying, brandishing, and discharging a firearm during and in relation to the drug-trafficking crimes charged in the indictment, causing the murders of Armstrong (Count Five) and the passenger (Count Six), in violation of 18 U.S.C. § 924(c).  The Higgs brothers were separately

---

[2] Armstrong had survived a prior attempt on his life on September 22, 2018.

charged with attempting to possess a controlled substance with intent to distribute, in violation of § 846 (Count Four); and possession of ammunition knowing they had been convicted of felonies, in violation of 18 U.S.C. § 922(g) (Count Seven).[3]  Defendants pled not guilty and proceeded to trial.

After the government presented its case at trial, the defendants moved for judgment of acquittal on all counts.  As relevant here, they argued that there was insufficient evidence of any drug conspiracy or of use of "a facility of interstate commerce including a means of transportation" under the murder-for-hire statute, § 1958.  On the commerce element, they pointed to evidence that the road where the incident occurred was maintained by the State of Florida, not the federal government, and to the lack of evidence of a rental car or interstate travel.  The government responded that the evidence showed the transfer of a "distribution level amount" of cocaine, and that the defendants used two facilities of interstate commerce: (1) U.S. Route 19, an interstate roadway; and (2) a vehicle.

The district court denied the motions for judgment of acquittal in substantial part but reserved ruling on the murder-for-hire counts.  After conducting further research, the court found that § 1958's jurisdictional element is satisfied "whenever any facility of interstate commerce is used in the commission of a murder

---

[3] The district court severed counts eight and nine, which charged additional gun crimes against Jhaphre, and later dismissed these counts on the government's motion.

for hire even when the use is purely intrastate." And in the court's view, a car used to commit a murder for hire is a "means of transportation" that qualified as a "facility of interstate commerce," even without interstate travel. Then, at the close of the evidence, including defense witnesses from Williams and Jhaphre, the defendants renewed their motions, which the court denied.[4]

During the charge conference, Defendants objected to the substantive murder-for-hire jury instruction, arguing that it should require the jury to find that Defendants had *knowingly* used or caused another to use a facility of interstate commerce. The district court overruled the objection.

The jury found Defendants guilty as charged. The district court sentenced all three Defendants to life imprisonment plus twenty years.

## II.

Defendants attack their murder-for-hire convictions on three grounds. First, they argue that insufficient evidence supports their convictions because, as a matter of statutory interpretation, § 1958's interstate commerce element requires more than the intrastate use of a private car. Second, they contend that the murder-for-hire statute exceeds Congress's authority under the Commerce

---

[4] The district court again reserved ruling as to Williams only, since he was not in the car with the Higgs brothers, but later denied the motion for judgment of acquittal after receiving additional briefing. Williams does not challenge that additional ruling on appeal.

Clause as applied to solely intrastate use of a personal vehicle on a locally maintained road. Finally, Defendants challenge the jury instructions on the substantive murder-for-hire count, contending that a scienter requirement applies to the commerce element.

### A.

We review de novo issues of statutory interpretation and sufficiency of the evidence. *United States v. Lanzon*, 639 F.3d 1293, 1298 (11th Cir. 2011). "We view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict." *Id.*

Section 1958(a) makes it a crime to "use[] or cause[] another . . . to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed," in exchange for anything of pecuniary value, or to conspire to do so. 18 U.S.C. § 1958(a); *see United States v. Preacher*, 631 F.3d 1201, 1203 (11th Cir. 2011). Section § 1958(b)(2) states that the term "'facility of interstate or foreign commerce,' includes means of transportation and communication." 18 U.S.C. § 1958(b)(2).

We have not addressed whether § 1958's "facility-of-commerce" element reaches the intrastate use of a vehicle to commit a murder for hire. Defendants do not dispute that a vehicle can qualify as a "facility of interstate commerce" as a "means of transportation." But they contend that § 1958's scope is "limited to vehicles that actually did travel interstate or that are regularly used to travel interstate," such as rental vehicles or long-distance transport for

people or freight.  So in Defendants' view, § 1958 does not reach the mere intrastate use of a vehicle in a murder for hire.

Congressional power to regulate interstate commerce extends to the channels and instrumentalities of interstate commerce, as well as certain activities that substantially affect interstate commerce.  *United States v. Ballinger*, 395 F.3d 1218, 1225 (11th Cir. 2005) (*en banc*).  And the power "to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature."  *Id.*

While this appeal was pending, a divided panel in *United States v. Bryan* held that automobiles "are per se instrumentalities of interstate commerce."   159 F.4th 1274, 1295 (11th Cir. 2025).  *Bryan* concerned a challenge to the federal kidnapping statute, 18 U.S.C. § 1201(a)(1), and whether a truck used in the offense qualified as an "instrumentality" of interstate commerce under that statute even though its use was purely intrastate.

The majority opinion in *Bryan* explained that "channels" of interstate commerce are "the transportation routes through which persons and goods moves," while "instrumentalities" are "the various forms of transportation equipment by which a person travels those routes."  *Id.* (quotation marks omitted).  "Because automobiles are the transportation equipment used to traverse highways, automobiles fit as the instrumentalities used on highways, just as railcars and airplanes are the instrumentalities used on railroads and in airspace, respectively."  *Id.* at 1296.  Yet instrumentalities and

channels "need not always be paired for Congress to regulate them." *Id.* As a result, "Congress may regulate even local use of instrumentalities of interstate commerce absent an accompanying channel (e.g., an interstate highway)." Thus, automobiles can be instrumentalities of interstate commerce "regardless of whether their use during [the offense] is interstate or purely local." *Id.*

Here, the district court properly denied Defendants' motions for judgment of acquittal on the murder-for-hire counts based on their intrastate use of an automobile to commit the offenses. For reasons based on both the statutory language and our recent decision in *Bryan*, we affirm their convictions.

First, § 1958(a)(1) "does not require that a facility of interstate commerce actually be used in interstate commerce." *United States v. Mandel*, 647 F.3d 710, 721 (7th Cir. 2011). As we noted in *United States v. Drury*, Congress in 2004 amended § 1958 to change the phrase "facility in" to "facility of." 396 F.3d 1303, 1311 (11th Cir. 2005). That amendment, we observed, "makes absolutely clear that § 1958 establishes federal jurisdiction whenever any 'facility of interstate commerce' is used in the commission of a murder-for-hire offense, regardless of whether the use is interstate in nature . . . or purely intrastate in nature." *Id.*; *see Bryan*, 159 F.4th at 1295 ("Statutes that regulate vehicles 'in' commerce . . . regulate a different, more limited class of vehicles than statutes that regulate . . . vehicles 'of' commerce. The former regulate vehicles actually traveling in interstate commerce, while the latter regulate vehicles that could be used in interstate commerce.").

Second, § 1958(b)(2) defines a "facility of" interstate commerce to "include[] means of transportation and communication." 18 U.S.C. § 1958(b)(2). Automobiles quite plainly are means of transportation. They are "inherently mobile and indispensable to the interstate movement of persons and goods." *Bryan*, 159 F.4th at 1297 (quoting *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998)); *see Mandel*, 647 F.3d at 722 ("Automobiles are designed to move people and goods over distances both long and short, and as such they play a crucial role in interstate commerce.").

Third, our holding in *Bryan* that automobiles are "*per se* instrumentalities" of interstate commerce strongly supports a conclusion that they are *per se* "facilities" of interstate commerce as well. 159 F.4th at 1295. Our sister circuits have observed that, when it adopted § 1958, Congress "sought to punish contract killings pursuant to its authority to regulate the instrumentalities of interstate commerce." *United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003); *see also United States v. Marek*, 238 F.3d 310, 317 (5th Cir. 2001) (*en banc*). And they have found that "the terms 'facility of interstate commerce,' as used in section 1958, and 'instrumentality of interstate commerce,' as used in case law concerning the Commerce Clause, are essentially interchangeable." *Mandel*, 647 F.3d at 716 n.2; *United States v. Runyon*, 707 F.3d 475, 489 (4th Cir. 2013) (same); *Marek*, 238 F.3d at 317 n.26 (finding "no meaningful distinction between the terms 'facilities' and 'instrumentalities' of interstate commerce"). We likewise see no meaningful difference between these terms as applied here.

Finally, although Defendants assert that *Bryan* was wrongly decided, we are bound by its holding under our prior-precedent rule. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court.") (quotation marks omitted). "It does not matter whether a prior case was wrongly decided, whether it failed to consider certain critical issues or arguments, or whether it lacked adequate legal analysis to support its conclusions." *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018) (citations omitted). We also flatly reject Defendants' claim that *Bryan's* holding—that an automobile used purely intrastate qualifies as an "instrumentality" of interstate commerce—is mere dicta, based on purported violations of the party-presentation principle, or is otherwise not relevant to deciding the statutory issue here.

For these reasons, the district court properly denied the motions for judgment of acquittal on the murder-for-hire counts. The evidence shows that Defendants used, or caused another to use, a Lexus car—a *per se* instrumentality of interstate commerce—with the intent to commit a contract killing. *See Bryan*, 159 F.4th at 1295. Because a "facility" of interstate commerce includes a means of transportation, 18 U.S.C. § 1958(b)(2), even if the use is "purely intrastate in nature," *Drury*, 396 F.3d at 1311, we hold that the jury had sufficient evidence to convict Defendants of violating § 1958(a)(1), even though their use of the car was purely local.

**B.**

Defendants next argue that § 1958 exceeds Congress's commerce power insofar as it reaches the purely intrastate use of a personal vehicle to commit a contract killing.  We would ordinarily review the constitutionality of a statute de novo, but because this argument was raised for the first time on appeal, our review is for plain error only.  *See United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).  An error is plain only if it is contrary to a federal statute or on-point precedent of this Court or the Supreme Court.  *United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013).

Defendants cannot establish plain error.  *Bryan* expressly held that automobiles are *per se* instrumentalities of interstate commerce.  *See Bryan*, 159 F.4th at 1295.  Defendants maintain this was merely a "statutory holding," not a constitutional one.  *See id.* at 1281 ("Defendants do not raise any constitutional challenges on appeal.").  Even assuming that's true and setting *Bryan* aside, however, Defendants fall well short of establishing plain error.

As they acknowledge, our sister circuits have upheld § 1958's constitutionality as applied to purely intrastate conduct, including as to intrastate use of a personal vehicle.  *See Mandel*, 647 F.3d at 722 ("As applied to Mandel's intrastate use of his automobile, the statute does not plainly exceed the scope of Congress's Commerce Clause authority.").  To be sure, at least one circuit has held that the commerce power does not reach all uses of "motor vehicles" to commit crimes.  *United States v. Chavarria*, 140 F.4th 1257, 1268 (10th Cir. 2025).  But even there, the court noted that the term "motor vehicle," as charged in the relevant indictment,

was "considerably" broader than the terms "automobile" or "car," and did not expressly address those latter terms. *Id.* at 1264 & n.14. And in any case, the mere fact that "other circuits are split" on a question does not establish plain error. *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000). Accordingly, Defendants have not shown that § 1958 plainly exceeds Congress's commerce power as applied to their conduct.

## C.

Finally, Defendants contend that the jury instructions were inaccurate because the jurisdictional nexus element for murder-for-hire offenses includes a *mens rea* component about the use of interstate facilities. They concede, however, that we have rejected the argument that the use of a facility of interstate commerce under § 1958(a) "must be knowing or intentional." *Drury*, 396 F.3d at 1312–13.

In *Drury*, we saw "no reason that unintentional use in interstate commerce would not qualify as use in interstate commerce," and we observed that our "precedent suggests that there is none." *Id.* at 1312; *see United States v. Davila*, 592 F.2d 1261 (5th Cir. 1979) (holding that that the "purely incidental" interstate routing of a

22-13469              Opinion of the Court              13

Western Union wire transfer satisfied the interstate commerce requirement of the federal wire fraud statute, 18 U.S.C. § 1843).[5] Defendants cite the Supreme Court's more recent decision in *Rehaif v. United States*, 588 U.S. 225 (2019), but *Rehaif* was about the term "knowingly" under § 922(g)(1), which they concede does not appear in § 1958. So, even assuming *Rehaif*'s reasoning is "at odds" with *Drury*, "that does not provide [us] with a basis for departing from [our] prior decision." *Vega-Castillo*, 540 F.3d at 1237. We therefore reject this argument.

## III.

Turning to the controlled-substance offenses, the defendants contend that the evidence was insufficient to establish a conspiracy between Williams and the Higgs brothers to distribute cocaine. They contend that the government at trial proved only a separate drug conspiracy between Williams and another person, which, in their view, was a material variance from the conspiracy charged in the indictment. Based on similar arguments, James and Jhaphre also challenge the sufficiency of the evidence to support their convictions for attempted possession of cocaine with intent to distribute. Defendants note that, if we vacate their drug convictions, their convictions under 18 U.S.C. § 924(c) must fall as well, but they do not otherwise challenge these convictions.

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions rendered by the former Fifth Circuit before October 1981.

As noted above, we review issues of evidentiary sufficiency de novo, viewing the evidence and drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. *Lanzon*, 639 F.3d at 1298. "[W]e are obliged to affirm the convictions if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014). Moreover, because credibility determinations are the exclusive province of the jury, we may not disregard the jury's credibility determination unless it is unbelievable on its face. *United States v. Garcia*, 405 F.3d 1260, 1270 (11th Cir. 2005). The fact that a witness has consistently lied in the past, engaged in various criminal activities, thought that his testimony would benefit him, and showed elements of mental instability does not make his testimony *per se* incredible. *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985).

Section 841(a)(1) makes it unlawful for a person knowingly to distribute or possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). "[A] person violates § 841(a) merely by knowingly possessing with intent to distribute a controlled substance." *United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012). Section 846 makes it unlawful to attempt or conspire to commit a violation of § 841(a). 21 U.S.C. § 846.

To sustain a drug-conspiracy conviction under § 846, "the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly

joined or participated in the illegal venture." *Reeves*, 742 F.3d at 497; *see United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021). "Agreements to enter into conspiracies can be shown by inferences from the conduct of the participants." *United States v. Johnson*, 889 F.2d 1032, 1035 (11th Cir. 1989).

Ordinarily, a simple drug transaction "does not, by itself, form a conspiracy," *United States v. Achey*, 943 F.3d 909, 917 (11th Cir. 2019), because the parties "do not have the joint criminal objective of distributing drugs," *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). "Yet a conspiracy can be found if the evidence allows an inference that the [parties] knew the drugs were for distribution instead of merely understanding their transactions to do no more than support the buyer's personal drug habit." *Achey*, 943 F.3d at 917 (quotation marks omitted). Such an inference can be drawn when there is evidence of a "continuing relationship," or "where the amount of drugs allows an inference of a conspiracy to distribute drugs." *Id.*; *see United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005) ("Intent to distribute may be inferred from the amount of [the drug] involved.").

Here, sufficient evidence supports Defendants' convictions for conspiring to distribute cocaine. A witness who claimed to be a "seasoned drug dealer" testified that he saw Williams give James, with Jhaphre looking on, "several ounces" of cocaine, which he agreed was a "distribution amount," in exchange for killing Armstrong. Plus, that same witness testified that Williams first offered him $30,000 before turning to the Higgs brothers, who were paid

$20,000 in cash, so the jury could infer that the cocaine was worth up to $10,000.  *See United States v. White*, 837 F.3d 1225, 1232–35 (11th Cir. 2016) (indicating that intent to distribute can be inferred by possession of at least one ounce of cocaine).  Defendants complain that the witness was not credible for several reasons.  But the jury knew about these matters, so we will not second-guess the jury's credibility findings.  *See Rivera*, 775 F.2d at 1561.

Based on the Higgs brothers' receipt of "several ounces" of cocaine worth multiple thousands of dollars, as well as their joint action in committing the murder-for-hire, a jury could reasonably infer that they had agreed to possess cocaine with intent to distribute.  *See Colston*, 4 F.th at 1187–88; *Reeves*, 775 F.2d at 497.  And similar to as in *Achey*, the evidence allows a reasonable inference that Williams knew the cocaine he offered as payment to the Higgs brothers was not for their "personal drug habit," but rather that he "must have known that [the Higgs brothers] would further distribute the drugs, and thus was acting with knowledge of the illegal purpose."  *Achey*, 943 F.3d at 916.  Because we conclude that the evidence was sufficient to support the drug conspiracy charged, we reject Defendants' argument that the proof at trial materially varied from the indictment.

For these reasons, the district court properly denied Defendants' motions for judgment of acquittal as to the drug offenses.

## IV.

Finally, James and Jhaphre challenge their convictions for knowing possession of ammunition as convicted felons, arguing

that 18 U.S.C. § 922(g)(1) is unconstitutional.  As they concede, however, this argument is foreclosed by binding circuit precedent. *See United States v. Dubois*, 139 F.4th 887, 892–94 (11th Cir. 2025) (holding that we remain bound by our holding in *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010), that § 922(g)(1) does not violate the Second Amendment), *petition for cert. filed*, (U.S. Dec. 1., 2025) (No. 25-6281).  We therefore affirm their § 922(g)(1) convictions.

**AFFIRMED.**