[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14081

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TIMOTHY JEROME RUSSELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cr-00023-JFD-JTA-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

When Montgomery police officers saw that defendant Timothy Jerome Russell was driving a car with an expired registration, they initiated a traffic stop. During the traffic stop, they discovered that Russell was in possession of a firearm. He was subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before trial, Russell moved to suppress the gun and the ammunition, as well as statements he made, because he claimed the investigating officers violated his Fourth and Fifth Amendment rights. The district court granted in part and denied in part the motion. The court declined to suppress the physical evidence found in Russell's car because the evidence was admissible under either the automobile exception or the inevitable discovery exception to the Fourth Amendment. It also declined to suppress some of the inculpatory statements that Russell made to the officers. But the district court concluded that incriminating statements Russell made after he was handcuffed and detained in the officers' patrol car should be suppressed because the arresting officers failed to advise Russell of his *Miranda*[1] rights.

On appeal, Russell challenges the district court's denial of his motion to suppress the physical evidence discovered during the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

traffic stop. After careful review, we conclude that the district court did not err. We therefore affirm.

## I.    BACKGROUND

One evening in August 2018, Montgomery police officers Anphernee Canty and Luke Carey were patrolling near the Ann Street interstate exit, "riding around, looking for crime, looking for things that might be suspicious," and found themselves driving behind a 2004 Mercury Grand Marquis. Doc. 41 at 36.[2] While driving behind the car, Officer Canty asked his partner to run a compliance check on the Grand Marquis. According to Canty, nothing in particular drew his attention to the car—it just happened to be driving in front of the patrol car. The officers continued to follow the car while they ran the license plate through the state's enforcement database,[3] which alerted them that the car's registration was suspended. When the car pulled into a gas station and stopped at a gas pump, the officers followed. The officers then activated the patrol car's emergency lights and began a traffic stop.[4]

---

[2] "Doc." numbers refer to the district court's docket entries.

[3] As explained by the magistrate judge, the local law enforcement system, Law Enforcement Tactical System ("LETS"), is a web-based search engine that searches Alabama state databases and provides information such as vehicle, driver, and violation data and driver's license photos. Officers use the system on mobile devices in patrol cars.

[4] When the officers turned on the patrol car's emergency lights, the patrol car's dashboard camera began recording.

Canty exited the patrol car, approached the vehicle, and informed the driver, Russell, that he had been stopped because the car's registration was suspended. Canty directed Russell to hand over his driver's license and proof of insurance. Russell handed Canty his license, said he did not have insurance, and responded that he did not have anything in the car. At this point, Canty had decided that he was going to have to tow Russell's car because Russell did not have insurance. Canty also asked Russell whether there was "anything in the vehicle [Canty] should know about ahead of time." *Id.* at 8.

Canty returned to the patrol car and ran Russell's driver's license through the state's database, which alerted Canty that Russell's license had been suspended. Canty contacted police dispatch to have them search the National Crime Information Center (NCIC) database for alerts about Russell.

While waiting for dispatch to return results from the search, Canty went back to Russell's car. Canty told Russell that the vehicle was going to be towed and asked Russell to exit the car.[5] Russell complied and exited the car. Canty patted Russell down, found no weapons or drugs, and asked for a second time if he had anything in the vehicle that Canty needed to know about. At this point,

_____

[5] Sometime during the traffic stop, after Russell was detained in the patrol car and the tow truck had been called, police dispatch informed Officers Canty and Carey that Russell had multiple outstanding warrants for failure to appear in court.

Russell told Canty there was a small amount of marijuana in the car in the glove compartment inside the passenger's side. Canty handcuffed Russell and escorted him to the backseat of the patrol car.

Canty searched Russell's car. He found "narcotics" in the glove compartment, where Russell had said the marijuana would be. Canty returned to the patrol car, where Russell was in in the backseat, handcuffed. Canty asked Russell if he had previously been arrested or spent time in jail for marijuana. Canty then asked for the third time, whether there was anything else in the car. Russell admitted: "There's a gun in there." Doc 40-4 at 21:08:45–21:08:50 (Camera 2).

Canty and Carey searched the area of the car where Russell said the gun was located, immediately found it, and returned to the patrol car. At this point, they did not tell Russell that he was under arrest or advise him of his *Miranda* rights. Canty said something to Russell, and Russell twice stated, "don't talk to me, man." *Id.* at 21:10:06–21:10:23 (Camera 2).

A few minutes later, Canty tried to prompt Russell to speak again, saying, "[h]elp yourself out, you had a round and a magazine," referring to the ammunition found in Russell's car. *Id.* at 21:12:00–21:12:04 (Camera 2). After a few more minutes, Canty told Russell he was "[l]ooking at like four charges right now." *Id.* at 21:14:14–17 (Camera 2). By this time, Russell had been sitting in the backseat handcuffed for a little more than 10 minutes. He began to complain about feeling hot in the back of the patrol car. He

was sweating and asked for more air in the car or for a window to be opened. Canty responded that they had turned the air up all the way and told Russell he could not lie down with his head on the seat.

About 25 minutes after the stop began, the tow truck arrived. By then, neither Canty nor Carey had told Russell that he was under arrest or advised him of his *Miranda* rights. Shortly after the tow truck arrived, Canty asked Russell, "[h]ow long you been selling, man?" *Id.* at 21:26:29–21:26:31 (Camera 2). When Russell responded that he did not really sell marijuana, Canty retorted, "how long you been selling, don't play with me." *Id.* at 21:26:35–21:26:45 (Camera 2).

At that point, Canty told Russell he was under arrest and recited his *Miranda* rights. At the end of the admonition, Canty appended the question, "are you willing to answer any questions without an attorney present?" *Id.* at 21:27:55–21:28:08 (Camera 2). Russell responded, "no." *Id.* at 21:28:13–14 (Camera 2). But Canty pressed forward, advising: "It's simple man, like if you don't wanna talk you ain't gotta talk; if you want to talk you can; I'm not gonna force you," and went on to say, "I'm gonna ask you a question. If you don't want to answer you ain't got to answer." *Id.* at 21:28:18–21:28:36 (Camera 2). Russell stated that he did not want to speak with Canty.

Canty nevertheless continued to question Russell. He asked Russell how much marijuana he had in the car, whether he sold part-time, and whether he used the gun to assist him in selling

drugs. In response, Russell admitted that he sold drugs sometimes, but mostly used the marijuana. Russell was then transported to the county jail.

A grand jury indicted Russell on one count of possession of a firearm after having previously been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1).

Before trial, Russell moved to suppress the physical evidence seized during the stop, as well as his statements made during the stop. He argued that the warrantless search of his car violated the Fourth Amendment and that neither the automobile exception nor the search incident to arrest exception applied. He urged the court to suppress the gun and ammunition as the fruits of an illegal search. He further argued that his statements indicating that there were drugs and a gun in the car should be suppressed because Canty failed to advise Russell of his *Miranda* rights. He also argued that the statements made after Canty advised him of his rights, including admitting that he sold drugs, should be excluded because they were improperly elicited after he invoked his right to remain silent.

The government opposed the motion to suppress. It argued that the initial stop was a lawful traffic stop, and the warrantless searches of the car were legal under the automobile exception to the Fourth Amendment because Canty had probable cause to believe there was contraband in the vehicle based on Russell's admission that he had marijuana. The government also argued in the alternative that even if the search was unlawful, none of the evidence

should be suppressed because it would have been discovered inevitably during an inventory of the car once it was towed. In addition, the government initially argued that Russell was not in custody when he told Canty that there was marijuana and a gun in the car so there was no Fifth Amendment violation at any point before the *Miranda* warning was given.[6]

The magistrate judge held an evidentiary hearing on Russell's motion to suppress. At the hearing, the judge reviewed the dashboard camera footage[7] and heard Canty's testimony about the stop. Among other things, Canty testified that, consistent with Alabama's Safe Streets Act, the police department's policy mandated that any vehicle operated by an unlicensed or uninsured driver be towed. Canty explained that once he learned that Russell had no insurance, he "knew" that he was going to have Russell's car towed. Doc. 41 at 8–9. He also testified that department policy required officers to inventory and document all items found inside a car before releasing it to a tow company. When pressed about how he implemented the statute and policy during his time as an officer,

---

[6] Notably, the government did not try to defend Canty's questioning of Russell *after* he had advised Russell of his *Miranda* rights and seemed to concede that Russell's statements were elicited in violation of his Fifth Amendment rights.

[7] At the suppression hearing, Canty testified that he was wearing a body camera that recorded the traffic stop. But the body camera footage was not part of the record in the case because it apparently was not preserved after Russell's arrest.

he testified that at the time of the stop, he had been a patrol cop for only one year but estimated he had stopped people without valid driver's licenses or insurance "[m]ore times than [he could] count, probably," and in those instances, he had the person's car towed 95 percent of the time. *Id.* at 34.

After the hearing, the magistrate judge recommended that Russell's motion to suppress the physical evidence found in his car be denied, but that some of his statements should be suppressed. The magistrate judge found that the gun and ammunition were admissible under the automobile exception. The magistrate judge also concluded that, even assuming the search had been unlawful, the evidence would have been discovered eventually during an inventory search and was therefore covered by the inevitable discovery doctrine.

As to the statements, the magistrate judge recommended that Russell's statements outside the patrol car—including the admission that he had marijuana in his car—were admissible because he was not yet in custody for the purposes of *Miranda*. But the magistrate judge recommended that all of Russell's statements that he made while handcuffed inside the patrol car should be suppressed. With regard to Russell's statements made in the car before the *Miranda* warning—including his admission that there was a gun in the car—the magistrate judge found that Russell was in custody at this point, and Canty had failed to advise him of his rights before eliciting incriminating statements. And the magistrate judge determined that the statements Russell made after he was arrested

and advised of his *Miranda* rights should also be suppressed. The magistrate judge found that "Canty did not cease his questioning of Russell once the invocation of rights occurred." Doc. 44 at 25. Although Canty testified that Russell waived his *Miranda* rights before making these statements, the magistrate judge observed that Canty's testimony was inconsistent with the dash cam's recording of the stop and that Russell invoked his right to remain silent. Nowhere in the recording did Russell waive his rights.

Russell objected to the magistrate judge's recommendation, arguing that the district court should suppress the physical evidence. He argued that the gun and ammunition were found based on his statements that Canty elicited illegally and that no exception to the Fourth Amendment could excuse the warrantless search of his car. He also said that the magistrate judge erred in concluding that the inevitable discovery doctrine applied, arguing for the first time that Canty's testimony that Alabama's Safe Streets Act and police department policy required him to tow the vehicle were incorrect. He reasoned that there was "no way" Canty could have known that Russell's car would be towed before he conducted any search of the car because it was not required to be towed under the Safe Streets Act—contrary to Canty's testimony. Doc. 51 at 5.

He further objected to the magistrate's recommendation that his statements outside the patrol car should not be suppressed. He renewed his argument that Canty was required to advise him of his *Miranda* rights prior to any of this questioning.

The district court adopted the magistrate's recommendation and issued an order denying Russell's motion as to the physical evidence and granting Russell's motion as to his statements in the patrol car. The district court's order did not directly address Russell's argument that Canty's flawed understanding of the Safe Streets Act or department policy meant that the physical evidence would not inevitably have been discovered.

Before trial, Russell moved in limine to preclude the government from introducing into evidence any drugs or drug paraphernalia found in the car. The district court granted the motion. At trial, the government showed the jury the dash cam video, but because of the motion to suppress, the version it introduced had no audio—and therefore included none of Russell's statements from before or after he was detained in the patrol car. And Canty's testimony at trial omitted any mention of Russell's statements about the marijuana, or Canty's finding any marijuana or other drugs in the car. Instead, he testified only about initiating the stop, approaching Russell's car, and informing Russell the car was going to be towed because of the suspended tag. He then skipped to finding and retrieving the gun from the car. The jury convicted Russell for being a felon in possession of a firearm.

Russell now appeals the district court's order denying in part his motion to suppress.

## II.    STANDARD OF REVIEW

A district court's "denial of a motion to suppress involves mixed questions of fact and law." *United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015). This Court reviews the district court's factual findings for clear error, viewing "the evidence in the light most favorable to the prevailing party," and reviews *de novo* the application of the law to the facts. *Id.*

We may affirm the denial of a motion to suppress on any ground that the record supports. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). We afford substantial deference to the district court's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). We will only reverse a factual finding if it is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Cavallo*, 790 F.3d 1202, 1227 (11th Cir. 2015) (internal quotation marks omitted).

We review for plain error arguments that a criminal defendant raises regarding an objection that he should have raised below but did not. *United States v. Hoffman*, 710 F.3d 1228, 1231–32 (11th Cir. 2013).

"We review for abuse of discretion the treatment by a district court of a report and recommendation of a magistrate judge." *United States v. Franklin*, 694 F.3d 1, 6 (11th Cir. 2012) (internal quotation marks omitted).

### III.    DISCUSSION

Russell argues on appeal that the district court erred by denying his motion to suppress the gun and ammunition over his Fourth and Fifth Amendment arguments.[8] The district court provided two alternate grounds for denying the motion. First, it explained that the search of Russell's car was legal under the automobile exception to the warrant requirement. Second, it concluded that, even if the automobile exception did not apply, the physical evidence was nevertheless admissible under the inevitable discovery doctrine. We address each of these grounds, and Russell's related arguments on appeal, in turn.

Russell first contends that the officers did not have probable cause to search his car, so they violated his Fourth Amendment rights when they did so.[9] The government responds that the

---

[8] As we noted above, the district court denied the motion to suppress Russell's statement that there was marijuana in the car because it found there was no *Miranda* violation as to this statement. But before trial, the district court granted Russell's motion in limine to exclude all evidence related to the drugs found in his car, so neither the statement nor the physical drug evidence was introduced at trial.

[9] Russell did not challenge the initial traffic stop in the district court or on appeal—nor could he have been successful if he had. Such "seizures" are "constitutional if [they are] either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry*." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). Here, Russell's suspended tag registration was sufficient probable cause for the officers to initiate the stop.

automobile exception allowed the officers to conduct the search because Russell's admission that he had marijuana in the car provided Canty with the requisite probable cause. In response, Russell argues that there was no probable cause because his statement about the marijuana was elicited in a custodial interrogation and the officers failed to advise him of his *Miranda* rights, so the only basis for the search was obtained in violation of his Fifth Amendment rights.[10]

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. Evidence obtained as a direct result of an illegal search or seizure is subject to exclusion, as is "evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks omitted).

The automobile exception to the Fourth Amendment permits a warrantless search of an automobile if (1) it is readily mobile, and (2) there is probable cause to believe that it contains

---

[10] The district court ruled that all of Russell's statements made inside the patrol car—including the statements Russell made *before* Canty issued the *Miranda* warning—were inadmissible. Thus, the only statements about which Russell complains on appeal are the statements he made while outside the patrol car, before he was handcuffed and detained. But as we observed above, *supra* at 11, none of these statements were admitted at trial.

contraband or evidence of a crime. *United States v. Lanzon*, 639 F.3d 1293, 1299–1300 (11th Cir. 2011). The first prong is satisfied if the car is operational. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). "Probable cause . . . exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* (internal quotation marks omitted). If officers have probable cause to believe a car contains evidence of criminal activity, they may search every part of the car that may conceal this evidence. *California v. Acevedo*, 500 U.S. 565, 569–70 (1991).

*Miranda* guarantees a suspect's Fifth Amendment right against self-incrimination by requiring law enforcement officers to warn individuals subjected to custodial interrogation before any questioning that they have the right to remain silent, the right to have an attorney present during any questioning, and the right to appointed counsel. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The "custodial interrogation" definition is a limiting principle—an officer is only required to advise a suspect of his *Miranda* rights when he is "in custody" and "subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–301 (1980). To give teeth to *Miranda*'s prophylactic requirement, statements in a custodial interrogation "are inadmissible unless the suspect is specifically informed of his *Miranda* rights and freely decides to forgo those rights." *New York v. Quarles*, 467 U.S. 649, 654 (1984). But it is well-settled law that "*Miranda* does not require the exclusion of physical evidence that is discovered on

the basis of a voluntary, although unwarned, statement." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007).

In his appeal—as in the district court—Russell clings to his *Miranda* argument because, in his view, his statement that he had marijuana in his car was the key to the government's case. He contends that the officers lacked probable cause to believe there was contraband in the car until Canty elicited incriminating statements from him. Under this theory, Russell was subjected to a custodial interrogation without *Miranda* warnings when he told Canty about the marijuana, and without that violation, Canty would not have discovered the marijuana, would not have detained Russell in the patrol car, and would not have found the gun and ammunition.

This argument fails for two reasons: One, it disregards the well-settled rule that suppression of physical evidence is not a remedy for a *Miranda* violation, and two, even assuming there was a constitutional violation, the inevitable discovery doctrine applies.

First, Russell's purported *Miranda* claim is flawed because he seeks to suppress physical evidence under the guise of suppressing a statement.[11] *Id.* To be sure, the rule set forth in *Jackson*

---

[11] Because the government never introduced at trial any of Russell's statements outside the patrol car, Russell argues on appeal only that the district court should have granted his motion to suppress "the physical evidence." Appellant's Br. at 75. We thus understand Russell to be raising a *Miranda*-related argument only as it pertains to the physical evidence and whether the officers violated his constitutional rights when they searched the car.

applies only if the unwarned statement that led to the discovery of physical evidence was voluntary, but for the purpose of his appeal, conducting the ordinary Fifth Amendment inquiries—including whether Russell's statements were voluntary—is unnecessary because of the district court's second ground for denying Russell's motion to suppress the physical evidence: the gun and ammunition would have inevitably been discovered regardless of Canty's questioning of Russell and Russell's statements in response to those questions.

As to the second ground, Russell contends that the district court erred by ruling that, even if the search of the car was not legal under the automobile exception because the officers lacked valid probable cause, the gun and ammunition were admissible under the inevitable discovery doctrine. Russell says that Canty would not have found the evidence had he not elicited incriminating statements from Russell in violation of *Miranda*. He argues that because Canty was not pursuing a separate path to discovering the evidence that did not rely on Russell's unwarned statements, the inevitable discovery doctrine does not apply, and the district court erred by denying his motion to suppress. We agree with the district court.

When it adopted the inevitable discovery doctrine, the Supreme Court observed that there is no rational basis to suppress evidence obtained by unconstitutional methods "if the government can prove that the evidence would have been obtained inevitably." *Nix v. Williams*, 467 U.S. 431, 447 (1984). Under the "inevitable discovery" or "ultimate discovery" exception, the

government may introduce evidence that it obtained through an illegal search if it shows: (1) "by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means," and (2) "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *United States v. Watkins*, 13 F.4th 1202, 1211 (11th Cir. 2021) (en banc) (internal quotation marks omitted). To meet the preponderance-of-the-evidence standard, the government need not show an "[a]bsolute certainty" that the evidence would have been discovered, just "that it is more likely than not the evidence would have been discovered without the violation." *Id.* And to meet the "active pursuit" prong, the government only must show "that the police would have discovered the evidence by virtue of ordinary investigations of evidence or leads already in their possession." *Id.* (internal quotation marks omitted).

After considering the briefing, testimony, and oral argument on Russell's motion, the magistrate judge concluded that the government carried its burden of proof that the gun and ammunition "eventually would have been discovered by lawful means pursuant to an inventory search because Canty was actively pursuing the impoundment of the vehicle at the time of the search." Doc. 44 at 19. Specifically, the magistrate judge found that Canty was actively pursuing a lawful means of discovery because the officers had contacted a tow truck and that there was a reasonable probability the officers would have found the gun and ammunition in an inventory

search that was required by department policy. From the moment the officers learned Russell had no proof of insurance, they had probable cause to believe Russell was violating traffic laws by driving his car, and they were authorized to initiate the traffic stop. The magistrate judge found credible Canty's testimony that as soon as he discovered that Russell lacked valid insurance, Canty knew he was going to have Russell's car towed. The magistrate judge also determined that Canty understood the Safe Streets Act to mean that officers were required to have cars without valid insurance towed, and that department procedures required officers to inventory a vehicle's contents before it was towed and impounded. Canty testified that in only one year working as a patrol cop, he had already pulled over cars for suspended tags "[m]ore times than [he could] count," Doc. 41 at 34, and estimated that he had the cars towed in 95 percent of cases.

Even if we assume the search was unlawful under the Fourth Amendment because Russell's statements outside the patrol car were elicited in violation of *Miranda*, the district court correctly concluded that the evidence would have been discovered inevitably through a lawful inventory search and thus properly denied the motion to suppress. The district court's factual findings or credibility determinations were not clearly erroneous, inconsistent or improbable such that reversal would be proper. Indeed, the "demonstrated historical facts" discussed in *Nix*, 467 U.S. at 444 n.5, show that Russell's registration, license, and insurance were suspended or invalid, and the officers did in fact have the car towed

and impounded. Therefore, there is no plausible version of events in which the gun and ammunition—recovered from just inside the center console—would have eluded discovery in an inventory search.

Russell raises a related argument, that discovery of the gun and ammunition was not inevitable because Canty misunderstood the Safe Streets Act and the department's policy, which did not require the towing of Russell's car. Russell raised this argument for the first time in his objection to the magistrate judge's recommendation, despite the government having argued the inevitable discovery theory in its response to the motion to suppress, and at the evidentiary hearing. Notably, the district court's order adopting the recommendation did not address Russell's argument about the Safe Streets Act or the department's policy.

We have held that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Here, the district court did not abuse its discretion by declining to address Russell's arguments about the statute and policy that he had both notice of and an opportunity to raise at the evidentiary hearing.

Nor did the court err by adopting the recommendation over Russell's objection. Russell contends that Canty was wrong when he said the statute and policy required him to have Russell's car towed and that because Canty did not fill out an inventory sheet, "[w]e cannot know" whether Canty would have had the car towed,

or whether Russell would have asked someone else to come get the car, or whether some other version of events could have unfolded that would have prevented the evidence from being discovered. Appellant's Br. at 54. But these hypotheticals do not compel the conclusion that the district court erred by crediting Canty's testimony and concluding based on that testimony that Canty was going to have Russell's car towed and the gun and ammunition would have been found.

The district court did not err in determining that the doctrine of inevitable discovery permitted the admission of the gun and ammunition at Russell's trial. Accordingly, we affirm the district court's order denying in part Russell's motion to suppress.

**AFFIRMED.**